# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| WORD OF LIFE CHURCH OF EL PASO and TOM BROWN, | § § § | |
| *Plaintiffs*, | § | EP-17-CV-00049-DCG |
| v. | § § | |
| STATE FARM LLOYDS, | § § | |
| *Defendant*. | § | |

## ORDER

Presently before the Court is Defendant State Farm Lloyds' ("State Farm") "Motion for

Summary Judgment" (ECF No. 22) filed on August 9, 2017. Therein, State Farm requests that

the Court grant summary judgment in its favor on Plaintiffs Word of Life Church of El Paso

("Word of Life Church") and Tom Brown's ("Brown") (collectively "Plaintiffs") claims arising

out of and related to their insurance contract with State Farm. For the reasons that follow, the

Court **GRANTS** State Farm's motion.

## I. BACKGROUND

Brown is the President, Chairman of the Board of Directors, and Pastor of Word of Life

Church.[1] Word of Life Church renewed Policy Number 93-EZ-0103-2 (the "Church Policy" or

"Policy") with State Farm on November 15, 2010, to run through November 15, 2011.[2] The

Church Policy included Business Liability;[3] Directors, Officers and Trustees Liability;[4] and Duty

to Defend clauses.[5]

---

[1] Pls.' Resp. Def.'s Proposed Undisputed Facts at ¶ 1 [hereinafter Pls.' Resp. Def.'s PUF], ECF No. 25.

[2] Mot. Summ. J., Ex. A at 4.

[3] The Business Liability clause states in relevant part:

El Pasoans for Traditional Family Values ("EPTFV"), a specific-purpose political

committee chaired by Brown, was created for the purpose of supporting Ordinance Number

017546 on the November 2, 2010, election ballot.[6]  Ordinance Number 017546, titled

"Traditional Family Values Ordinance," stated in part: "[T]he City of El Paso endorses

traditional family values by making health benefits available only to city employees and their

legal spouse and dependent children."[7]  Voters approved the Traditional Family Values

Ordinance (the "Ordinance") at the November 2, 2010, election; however, on June 14, 2011, the

El Paso City Council amended the Ordinance to restore benefits to those who would have lost

---

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

*Id.* at 32.

[4] The Directors, Officers and Trustees Liability clause states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of '**wrongful acts**' committed by an insured solely in the conduct of their management responsibilities for the church." *Id.* at 39.

[5] The Duty to Defend clause states:

We will have the right and duty to defend any claim or **suit** seeking damages payable under this policy even though the allegations of the **suit** may be groundless, false or fraudulent.  The amount we will pay for damages is limited as described in Limits of Insurance.  Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.  We may investigate and settle any claim or suit at our discretion.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

*Id.* at 32.

[6] Pls.' Resp. Def.'s PUF ¶¶ 2–3.

[7] *Id.* ¶ 3.

them.[8] Mayor John F. Cook ("Cook") cast the tiebreaking vote in favor of amending the Ordinance.[9]

Following Cook's vote to amend the Ordinance, EPTFV, Word of Life Church, and Brown began circulating recall petitions seeking a recall election for Cook's office.[10] On September 12, 2011, Cook filed suit against Word of Life Church—later adding Brown as a named defendant—alleging violations of Texas Election Code Sections 253.094(b) and 253.031(b) for the misuse of church resources in the circulation and submission of the recall petitions and in raising and spending money for the recall effort.[11] Subsequently, El Paso County Court at Law No. 3 issued a temporary restraining order enjoining any further circulation of recall petitions and scheduled a temporary injunction hearing.[12] On November 28, 2011, the trial court denied Cook's request for injunctive relief.[13] On December 1, 2011, Cook appealed to the El Paso Court of Appeals, and on February 17, 2012, the El Paso Court of Appeals reversed the trial court's order denying injunctive relief.[14] The appellate court found that Plaintiffs had violated the Texas Election Code during the recall effort.[15] It then ordered the El Paso City

---

[8] *Id.* ¶ 4; *Cook v. Tom Brown Ministries*, 385 S.W.3d 592, 594 (Tex. App.—El Paso 2012, pet. denied).

[9] Pls.' Resp. Def.'s PUF ¶ 5.

[10] *Id.* ¶ 9.

[11] *Id.* ¶¶ 10–11, 14; Mot. Summ. J., Ex. C at 12–15. The underlying lawsuit initiated by Cook is hereinafter referred to as the "Cook Lawsuit."

[12] Pls.' Resp. Def.'s PUF ¶ 12.

[13] *Id.* ¶ 16.

[14] *Id.* ¶¶ 17, 21.

[15] *Cook*, 385 S.W.3d at 603 ("The evidence establishes that WOL Church made campaign contributions from its own property in connection with a measure-only recall election without properly making the contributions to a measure-only committee, Tex. Elec. Code Ann. § 253.096 (West 2010), and

Clerk to decertify the recall petition for Cook and rescind the resolution calling for an April 2012 recall election.[16] Subsequently, Word of Life Church appealed to the Texas Supreme Court, but on December 12, 2012, the Texas Supreme Court denied their petition for review.[17] On April 6, 2016, while considering the claims not decided by the El Paso Court of Appeals, the trial court entered an order finding that Plaintiffs were liable to Cook for violations of the Texas Election Code and set a trial to determine damages.[18] Prior to the trial, Plaintiffs entered into an agreed judgment with Cook that they were liable to him for $475,000 in damages.[19]

On January 24, 2012, prior to the decision of the El Paso Court of Appeals, Word of Life Church submitted its first claim for defense and indemnification of the Cook Lawsuit to State Farm.[20] However, after the El Paso Court of Appeals rendered its decision, Plaintiffs informed State Farm that because the El Paso Court of Appeals had awarded no fees, neither Brown nor Word of Life Church were making a claim at that time under the Church Policy.[21] Later, in December 2012, Plaintiffs submitted their second claim to State Farm, seeking defense and

---

that WOL Church, a corporation, made a political contribution in connection with a recall election, including the circulation and submission of petitions to call an election, and failed to make such contribution to a political committee in violation of Sections 253.096 and 253.094(b) of the Election Code."); *Id.* at 606 ("It is evident that violations of Section 253.031(b) of the Election Code have occurred.").

[16] Pls.' Resp. Def.'s PUF ¶ 25.

[17] *Id.* ¶¶ 23, 34.

[18] Def.'s Reply Pls.' Proposed Undisputed Facts ¶¶ 15–16 [hereinafter Def.'s Reply Pls.' PUF], ECF No. 28.

[19] *Id.* ¶ 19; Pls.' Resp. Def.'s PUF ¶ 47.

[20] Pls.' Resp. Def.'s PUF ¶ 18.

[21] *Id.* ¶ 29.

indemnification in the Cook Lawsuit.[22] On February 22, 2013, State Farm informed Plaintiffs that it had determined that it did not have a duty to defend or indemnify them based on the allegations made in Cook's Third Amended Petition.[23] In April 2016, Plaintiffs submitted a copy of Cook's Fourth Amended Petition and requested that State Farm reconsider its coverage decision.[24] In May 2016, State Farm informed Plaintiffs that because Cook's Fourth Amended Petition was nearly identical to his Third Amended Petition, State Farm's reasoning for denying coverage remained applicable.[25] Subsequently, on July 25, 2016, Plaintiffs submitted a demand to State Farm for $475,000 plus interest for its liability in the Cook Lawsuit and $450,000 plus interest for attorney's fees.[26] State Farm responded in August 2016 that Plaintiffs were not covered under the Church Policy, so State Farm had no duty to pay their attorney's fees or indemnify them.[27]

Plaintiffs filed suit on January 19, 2017, in the 41st Judicial District Court of El Paso County.[28] Plaintiffs assert claims for breach of contract, unjust enrichment, and bad faith insurance dealings and seek a declaration that State Farm had a duty to defend them in the Cook Lawsuit.[29] On February 21, 2017, State Farm removed the cause to this Court on the basis of diversity jurisdiction.[30]

---

[22] *Id.* ¶ 36; Mot. Summ. J., Ex. B at 28–29.

[23] Pls.' Resp. Def.'s PUF ¶ 39.

[24] *Id.* ¶¶ 41–43.

[25] *Id.* ¶ 46.

[26] *Id.* ¶ 48; Mot. Summ. J., Ex. B at 62.

[27] *Id.* ¶ 49.

[28] Not. Removal at 1, ECF No. 1.

[29] Second Am. Compl. at 8–13, ECF No. 18.

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). In deciding whether a genuine dispute as to any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party" but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted). Instead, the court "only 'give[s] credence to the evidence favoring the nonmovant [and] that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (second alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quotation marks and citation omitted). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence

---

[30] *Id.* at 1–4.

supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks and citation omitted). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 497 n.20 (5th Cir. 2014) (quotation marks and citation omitted).

## III. DISCUSSION

State Farm requests that the Court grant summary judgment in its favor on all of Plaintiffs' claims. Mot. Summ. J. at 20. Plaintiffs seek damages for breach of contract for State Farm's denial of their claim and a declaration that State Farm had a duty to defend them in the Cook Lawsuit. Second Am. Compl. at 8–10, 13. Further, Plaintiffs assert extra-contractual claims for unjust enrichment and bad faith insurance dealings. *Id.* at 10–13. The Court will analyze these claims in turn.

### A. Plaintiffs' Duty to Defend Claims

Plaintiffs argue that State Farm had a duty to defend them in the Cook Lawsuit, and State Farm's failure to do so constitutes a breach of contract. *Id.* at 8–10, 13. They base their claims on the Business Liability and Directors, Officers and Trustees Liability clauses in the Church Policy. *Id.* at 8–10. State Farm counters that Plaintiffs are not covered under the Church Policy. Mot. Summ. J. at 11–18.

"Texas follows the eight-corners rule, in which an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691–92 (5th Cir. 2010) (internal quotation marks omitted). Courts are generally prohibited from resorting to evidence outside the four corners of those two documents. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). Further, when examining the complaint, the court only defers to "a complaint's characterization of factual allegations, not legal theories or conclusions." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012); *see also Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 259 (5th Cir. 2017) ("When reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions."). "The court must resolve all doubts regarding coverage in favor of the insured, but it cannot . . . imagine factual scenarios which might trigger coverage." *Trinity Universal Ins. Co.*, 592 F.3d at 691 (internal quotation marks omitted) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141–42 (Tex. 1997)). The burden is typically on the insured to prove that the claim against him is potentially within the scope of the policy coverage. *Trinity Universal Ins. Co.*, 592 F.3d at 691–92.

Furthermore, "[u]nder Texas Law, insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Mid–Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citations omitted)). If an insurance policy is ambiguous or inconsistent, the interpretation that would grant coverage governs. *Id.* Moreover, a court must

adopt the insured's construction of an ambiguous policy provision as long as that construction is not unreasonable, even if the insurer's construction appears more reasonable. *Lubbock Cty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.3d 239, 242 (5th Cir. 1998). However, "[w]hen an insurance policy defines its terms, those definitions control." *Evanston Ins. Co.*, 370 S.W.3d at 381; *see also McQuinnie v. Am. Home Assur. Co.*, 400 F. App'x 801, 804 (5th Cir. 2010) (*per curiam*) ("Reliance on defined terms in insurance policies to construe those contracts is necessary to determine the intent of the parties and integral to the application of basic principles of contract interpretation to insurance policies." (internal quotation marks omitted) (quoting *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003))). If the terms are not defined, they are given their plain, ordinary meaning. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 805 (5th Cir. 2010).

The Court will first analyze whether State Farm had a duty to defend Word of Life Church before turning to the question of whether State Farm had a duty to defend Brown.

### 1. State Farm's Duty to Defend Word of Life Church

State Farm requests that the Court grant summary judgment in its favor because the allegations from the Cook Lawsuit fall outside the Church Policy. Mot. Summ. J. at 11–13. Specifically, State Farm contends that the recall election posting on Word of Life Church's website does not qualify as an advertisement and the Cook Lawsuit is not a result of an advertising injury, as defined by the Church Policy. *Id.* Thus, State Farm argues that it did not breach its contract when it refused to defend Word of Life Church. However, Word of Life Church counters that the petition in the Cook Lawsuit did state an advertising injury because its allegations implied that Word of Life Church's actions in trying to recall Cook disparaged him as the Mayor of El Paso. Resp. at 15.

The Business Liability clause in the Church Policy states in relevant part: "This insurance applies only . . . to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products, or services." Mot. Summ. J.., Ex. A at 32. Further, the Policy defines "advertising injury" in relevant part as an "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" *Id.* at 61. Next, the Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." *Id.* Finally, the notice at issue here, titled "Open Letter to City Council" and posted to the Word of Life Church website, stated:

> City Council and the Mayor disrespected the will of the people. They overturned the legitimate vote for the Traditional Family Ordinance. People who have complained that their votes do not count are justified. You lost the most basic, fundamental civil right of all, and that is to have your vote count. The whole idea that the people have the right to address grievances against their government has been abolished by this council. If you are upset at this action and would like to sign and/or circulate a recall petition against Mayor John Cook and Representatives Susie Byrd and Steve Ortega, then fill out the form below or come to one of the locations and sign a petition. Share this page with your friends and get them to fill out the form. Thanks.

Mot. Summ. J., Ex. C at 107. The notice went on to list six different locations where interested parties could sign the recall petition, including Word of Life Church. *Id.*

In considering whether the notice constitutes "advertising," the Court looks to the definition in the Church Policy and Texas law. "The Texas Supreme Court's definition of 'advertising' . . . accord[s] with our common understanding of the term as referring to a device for the solicitation of business." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 462 (5th Cir. 2003); *see also Smith v. Baldwin*, 611 S.W.2d 611, 615 (Tex.1980) (defining

"advertising" as a marketing device designed to induce the public to patronize a particular establishment). The Policy defines "advertisement" similarly to the Texas Supreme Court's definition of "advertising." *See* Mot. Summ. J., Ex. A at 61. Therefore, the question here is whether the notice posted to the Word of Life Church website was a marketing device designed to inform the public about the Church's goods, products, or services in order to induce them to patronize the Church.

Word of Life Church did not respond State Farm's contention that the notice posted on its website did not qualify as an "advertisement" or an occurrence committed "in the course of advertising [its] goods, products, or services." *See* Resp. at 14–16. The notice discussed the recall election and solicited the general public to sign the recall petition. This does not advertise the Church's goods, products, or services. Further, while Brown argues that Word of Life Church took part in the recall election to solicit likeminded members, this argument is unavailing here because the notice lists six different locations, only one of which was Word of Life Church, where interested parties could go to sign recall petitions. Resp. at 14; Mot. Summ. J.., Ex. C at 107. Construing the notice as advertising the Church's goods, products, or services would defy the plain meaning of those terms, the definition in the Policy, and common sense. *See Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 F. App'x 985, 994 (5th Cir. 2015) (*per curiam*) (using a "common sense" approach to determining whether the definition of "advertisement" was met). Accordingly, no reasonable jury could find that the notice posted on Word of Life Church's website constituted an "advertisement" or an occurrence committed in the course of advertising the Church's goods, products, or services.

Moreover, even if the notice constituted an "advertisement" or an occurrence committed in the course of advertising the Church's goods, products, or services, Word of Life Church still

would not be covered under the Church Policy because the Cook Lawsuit did not allege an advertising injury in its petition. Word of Life Church argues that Cook's Fourth Amended Petition[31] alleges that Plaintiffs disparaged[32] him as the Mayor of El Paso. Resp. at 15. In support, Word of Life Church points to Paragraph 28 of Cook's Fourth Amended Petition.[33]

However, Word of Life Church mischaracterizes Cook's Fourth Amended Petition. Cook only alleges violations of the Texas Election Code and states "Defendants' illegal conduct was an attempt to disenfranchise those voters who elected Cook to his office" as his injury. Mot. Summ. J., Ex. C at 22. Further, in alleging his damages, Cook refers to corporate campaign expenditures that violated the Texas Election Code as the basis for his statutory damages. *Id.* at 24. At no point does Cook assert damages or a cause of action related to the disparagement of his office or his person. The factual allegations of Cook's Fourth Amended Petition focus on

---

[31] "'As 'an amended pleading completely supersedes prior pleadings, . . . the duty to defend rests on the most recent pleading.'" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (quoting *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (5th Cir. 1998)).

[32] The word "disparage" is not defined in the Church Policy, so the Court gives it its plain meaning of "to lower in rank or reputation; degrade or speak slightingly about." *Uretek (USA), Inc. v. Cont'l Cas. Co.*, No. 15-20104, 2017 WL 3225700, at *2 (5th Cir. July 28, 2017) (*per curiam*) ("The term *disparage* is not a technical or industry-specific term, and so we are guided by its plain, ordinary, and generally accepted meaning . . . . So defined, to disparage is to lower in rank or reputation; degrade or speak slightingly about." (internal quotation marks omitted)).

[33] Paragraph 28 states:

The Plaintiff wholeheartedly endorses the rights of citizens to petition their government, including the ability to recall and remove from office elected officials. The right to petition for a recall ensures that incompetent or unethical leaders can be removed from office. Recall petitions should be used to correct malfeasance by an official, or conduct detrimental to the City and its citizens, but should not be employed simply to punish an official for a disappointing vote. The Plaintiff sought to ensure that any recall election efforts were conducted legally, and in accordance with established Texas law. Plaintiff seeks to have this Court enforce the laws of Texas. Enforcement of Chapter 253 of the Election Code is not optional for the Court. As the Proponent Defendants have admitted in court, they circulated and then submitted the petitions, but seek escape from responsibility for such actions.

Mot. Summ. J., Ex. C at 15.

Word of Life Church's violations of the Texas Election Code via its use of its resources, as a corporation, to gather signatures for the recall petitions. Mot. Summ. J.., Ex. C at 11–15, 19. Word of Life Church can only point to one purported reference in the Petition that supports their disparagement argument, and that reference merely explains the utility of a recall petition and why it was not appropriate in this case. *See id.* at 15. The Petition does not allege any sort of claim for the disparagement of Cook. Thus, there is no genuine dispute that Cook's Fourth Amended Petition does not allege an advertising injury potentially covered by the Church Policy. Therefore, State Farm is entitled to judgment as a matter of law on this claim.

Accordingly, the Court GRANTS summary judgment in favor of State Farm with regard to all of Word of Life Church's claims arising out of or related to State Farm's refusal to defend Word of Life Church in the Cook Lawsuit.

## 2. State Farm's Duty to Defend Brown

State Farm requests that the Court grant summary judgment in its favor because the allegations from the Cook Lawsuit fall outside the Church Policy. Mot. Summ. J. at 13–15. Specifically, State Farm contends that Brown's actions, as a director, in involving Word of Life Church in the recall election in violation of the Texas Election Code does not qualify as a wrongful act, as defined by the Church Policy. *Id.* Thus, State Farm argues that it did not breach its contract with Brown when it refused to defend him in the Cook Lawsuit. However, Brown counters that the petition in the Cook Lawsuit did state acts that qualify as wrongful acts under the Directors, Officers and Trustees Liability clause of the Church Policy because Brown's actions were not intentional and were in furtherance of a ministry of the Church. Resp. at 12–14. Nonetheless, State Farm argues that even if Brown's actions qualified as wrongful acts under the Policy, the Criminal Acts Exclusion would apply because the election laws he violated are

-13-

criminal laws. Mot. Summ. J. at 15–19. Brown responds that the Criminal Acts Exclusion cannot apply here because the First Amendment to the United States Constitution prevents the Texas Election Code from being criminally applied to this sort of case. Resp. at 17–19. Nevertheless, State Farm avers that collateral estoppel applies and prevents Brown from relitigating the First Amendment issues. Reply at 2–4.

The Directors, Officers and Trustees Liability clause of the Church Policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of '**wrongful acts**' committed by an insured solely in the conduct of their management responsibilities for the church." Mot. Summ. J.., Ex. A at 39. Further, the Policy defines "wrongful acts" as "any negligent acts, errors, omissions or breach of duty *directly related* to the operations of your church." *Id.* (emphasis added). There is no dispute that Brown qualifies as an insured under the Policy.[34] The issues here are twofold: 1) Do Brown's actions qualify as wrongful acts, and if so, 2) did Brown's actions directly relate to the operations of Word of Life Church?

State Farm argues that Brown is not covered under the Policy because his actions were intentional, not negligent. Mot. Summ. J. at 14–15. Brown counters that his actions that violated the Texas Election Code were not intentional; rather, they were negligent mistakes. Resp. at 12–

---

[34] The Church Policy provides:

When used in the provisions of this Option DO, the unqualified word insured means only the following:
a. any of your directors, officers or trustees, collectively and individually, which form your administrative body provided that each individual:
(1) is duly elected by the members of the church to serve on the managing body of that entity; and
(2) acts within the scope of their duties on your behalf

Mot. Summ. J., Ex. A at 39. In accordance with the terms of the Policy, Brown is a duly-elected director of Word of Life Church. Resp. at 11.

14. Brown asserts that he attempted to adhere to the Texas Election Code when he created EPTFV but unintentionally violated the law with the recall election efforts. *Id.* at 12. Quoting Webster's Dictionary, Brown contends that his actions that violated the Texas Election Code were simply "errors" based on his ignorance of the law. *Id.* at 13. Drawing all reasonable inferences in favor of Brown, a reasonable jury could conclude that his actions that violated the Texas Election Code were unintentional errors. Therefore, there is a genuine issue of material fact as to whether Brown's actions constituted a wrongful act.

However, Brown's actions must also have been directly related to the operations of Word of Life Church. State Farm contends that Brown's actions were not directly related to the operations of Word of Life Church because Brown's own statement says that the actions he took were "to help restore the rights of the voters."[35] Mot. Summ. J. at 14. Brown responds that his actions were directly related to the operations of Word of Life Church because the Church, through Brown, engaged in the recall effort as a ministry to solicit likeminded people to join the Church. Resp. at 14; *see also* Resp., Ex. A ¶ 6 ("By advertising the recall effort on the church's website, I was not only communicating this effort as a ministry of our church, through my leadership, as a church we were also seeking additional supporters for our church. God calls us

---

[35] In a writing titled "A Message from Pastor Tom Brown" posted to the Word of Life Church website, Brown stated in relevant part:

> It was not an easy decision to recall the mayor . . . . We do it for one reason: *to help restore the rights of the voters.* If any of the three recalls are successful we would theoretically have enough votes to restore the ordinance that the people voted for. This is our reason for the recall.
> . . .
> Mark and Claudia are just a sample of the disillusioned voters in El Paso. People want their votes to count. That is why we are helping to recall the mayor and two representatives. We do it for the Marks and Claudias out there. They want their voices to be heard.

Mot. Summ. J., Ex. C at 91–92.

to be salt and light in our communities. Our church is devoted to living out God's word, not just talking about God's word."). The word "operations" is not defined in the Church Policy, so the Court gives it its plain meaning of "the whole process of planning for and operating a business or other organized unit." Webster's Third New International Dictionary 1581 (2002). Brown's only evidence supporting the claim that the recall election was a ministry of the Church are his own self-serving statements.[36] Resp., Ex. A ¶ 6.

However, Brown's own words undermine the argument he now makes. For example, on the above-discussed notice posted to the Word of Life Church website, Brown attached a disclaimer that stated: "This internet site is owned by Tom Brown and not the Church. Tom Brown in his official capacity as pastor of Word of Life Church neither encourages or [sic] discourages the recall of the Mayor and Representatives." Mot. Summ. J.., Ex. C at 99; *see also id.* at 145 (noting that the recall petition was available to sign at Word of Life Church "Off Church Property"). Moreover, Brown has offered no competent summary judgment that corroborates his self-serving testimony.[37] Even after drawing all reasonable inferences in favor of Brown, no reasonable jury could find that his actions in the recall election effort were "directly related to the operations" of Word of Life Church. Therefore, State Farm is entitled to

---

[36] *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Tr.*, 541 F. App'x 443, 447 (5th Cir. 2013) (*per curiam*) ("[A] party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario.").

[37] In contrast to Brown's self-serving testimony, courts have generally not considered political campaigning to be an activity typical of the operations of a religious organization. *See United States v. Dykema*, 666 F.2d 1096, 1100 (7th Cir. 1981) ("Typical activities of an organization operated for religious purposes would include (a) corporate worship services, including due administration of sacraments and observance of liturgical rituals, as well as a preaching ministry and evangelical outreach to the unchurched and missionary activity in partibus infidelium; (b) pastoral counseling and comfort to members facing grief, illness, adversity, or spiritual problems; (c) performance by the clergy of customary church ceremonies affecting the lives of individuals, such as baptism, marriage, burial, and the like; (d) a system of nurture of the young and education in the doctrine and discipline of the church, as well as . . . theological seminaries for the advanced study and the training of ministers.").

summary judgment on this issue. Because Brown has failed to introduce a genuine issue of material fact regarding coverage under the Church Policy, the Court need not reach the Criminal Acts Exclusion and the issues accompanying it.

Accordingly, the Court GRANTS summary judgment in favor of State Farm with regard to all of Brown's claims arising out of or related to State Farm's refusal to defend Brown in the Cook Lawsuit.

## B. Plaintiffs' Duty to Indemnify Claims

Plaintiffs argue that State Farm had a duty to indemnify them in the Cook Lawsuit, and State Farm's failure to do so constitutes a breach of contract. Second Am. Compl. at 8–10. They base their claims on the Business Liability and Directors, Officers and Trustees Liability clauses in the Church Policy. *Id.* at 8–10. State Farm asserts that Plaintiffs are not covered under the Church Policy based on the allegations of the Cook Lawsuit, so it had no duty to indemnify them. Mot. Summ. J. at 11–18.

"Under Texas law, the duties to defend and indemnify are distinct and separate duties and enjoy a degree of independence from each other." *Weeks Marine, Inc. v. Standard Concrete Prod., Inc.*, 737 F.3d 365, 369 (5th Cir. 2013) (internal quotation marks omitted) (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–44 (Tex. 2009)). An insurer's duty to indemnify is generally ascertained at the completion of the litigation and is triggered by the actual facts establishing liability in the underlying suit. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253–54 (5th Cir. 2011). "[T]he insured carries the burden to establish the insurer's duty to indemnify by presenting facts sufficient to demonstrate coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008); *W. All. Ins. Co. v. N. Ins. Co. of New York*, 176 F.3d 825, 831 (5th Cir. 1999).

Therefore, Plaintiffs have the burden to establish State Farm's duty to indemnify by presenting facts sufficient to demonstrate coverage under the Church Policy. The Court has already found that State Farm is entitled to judgment as a matter of law on the issue of whether the Church Policy covered Plaintiffs in the Cook Lawsuit despite the Court drawing all reasonable inferences in their favor. Thus, State Farm had no duty to indemnify Plaintiffs.

Accordingly, the Court GRANTS summary judgment in favor of State Farm with regard to all of Plaintiffs' claims arising out of or related to State Farm's refusal to indemnify them in the Cook Lawsuit.

## C. The Extra-Contractual Claims

Plaintiffs assert claims for bad faith and unjust enrichment based on State Farm's refusal to defend and indemnify them in the Cook Lawsuit. Second Am. Compl. at 10–13. State Farm argues that since Plaintiffs are not covered by the Church Policy, their bad faith and unjust enrichment claims must fail as a matter of law. Mot. Summ. J. at 19–20. The Court will first analyze Plaintiffs' bad faith claim before turning to their unjust enrichment claim.

### 1. Plaintiffs' Bad Faith Claim

State Farm contends that Plaintiffs cannot recover for bad faith because there is a bona fide dispute as to whether they are covered under the Policy. *Id.* Further, State Farm avers that Plaintiffs cannot recover extra-contractual damages for benefits they are not owed. *Id.* at 19. Plaintiffs did not respond to either of these arguments. *See* Resp. at 1–21.

"Under Texas law, insurers have long had a duty to deal fairly and in good faith with an insured in processing and paying claims." *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 66 (5th Cir. 2011). "An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and

statutory duties." *USAA Texas Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752, at *4 (Tex. Apr. 7, 2017). However, an insured generally will not "prevail on a bad faith claim without first showing that the insurer breached the contract." *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Further, Texas law recognizes a two-prong test for a bad faith claim: 1) The insured must establish the absence of a reasonable basis for denying payment of the policy benefits and 2) that the insurer knew or should have known that there was not a reasonable basis for denying payment of the claim. *Thompson*, 664 F.3d at 66 n.3. Nonetheless, "insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997).

In the instant case, the Court has already found that State Farm is entitled to summary judgment on the issue of whether the Church Policy covered Plaintiffs in the Cook Lawsuit. Thus, State Farm had a reasonable basis for denying payment. Moreover, Plaintiffs have failed to establish an injury independent of State Farm's denial of their claim. *See Menchaca*, 2017 WL 1311752, at *11 ("The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits."). Without an independent injury, Plaintiffs are entitled only to the benefits they are owed under the Church Policy, which are none based on the Court's earlier findings. Thus, no reasonable jury could find for Plaintiffs on their bad faith claim.

Accordingly, the Court GRANTS summary judgment in favor of State Farm with regard to Plaintiffs' bad faith claim.

### 2. *Plaintiffs' Unjust Enrichment Claim*

State Farm contends that Plaintiffs cannot recover for unjust enrichment because they did not suffer an independent injury beyond State Farm's denial of their claim. Mot. Summ. J. at 19–20. Further, State Farm argues that Plaintiffs' claims are not covered by the Church Policy, so it was not unjustly enriched when it denied their claim. *Id.* at 20. Plaintiffs did not respond to either of these arguments. *See* Resp. at 1–21.

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "Unjust enrichment claims are based on quasi-contract." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015) (internal quotations marks omitted). However, when a valid contract covers the subject matter of the parties' dispute, "there can be no recovery under a quasi-contract theory, such as unjust enrichment." *Id.*; *see also Baxter v. PNC Bank Nat. Ass'n*, 541 F. App'x 395, 397 (5th Cir. 2013) (*per curiam*); *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 50 (Tex. 2008). This is because "parties should be bound by their express agreements." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

In the instant case, the Church Policy is an express agreement that covers the subject matter of the parties' dispute. The Court has already found that Plaintiffs were not covered under the agreement for their conduct that violated the Texas Election Code. Thus, State Farm does not owe Plaintiffs anything under the express agreement. Plaintiffs cannot use the theory of unjust enrichment to recover amounts they are not owed under the express contract. Therefore,

under Texas law, the Church Policy, not a quasi-contract theory such as unjust enrichment, governs this dispute.

Accordingly, the Court GRANTS summary judgment in favor of State Farm with regard to Plaintiffs' unjust enrichment claim.

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant State Farm Lloyds' "Motion for Summary Judgment" (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Word of Life Church of El Paso and Tom Brown's claims against State Farm Lloyds are **DISMISSED WITH PREJUDICE.**

**IT IS MOREOVER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter after docketing the Final Judgment to be issued separately on this day.

**So ORDERED and SIGNED this  4ᵗʰ  day of January 2018.**

DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**